# United States Court of Appeals

## *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

ANTJOUN RIDDICK,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## OPENING BRIEF OF APPELLANT

BRENT EVAN NEWTON
ATTORNEY AT LAW
19 Treworthy Road
Gaithersburg, Maryland 20878
(202) 975-9105
brentevannewton@gmail.com

*Attorney for Defendant-Appellant*

CP COUNSEL PRESS     (800) 4-APPEAL • (810017)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF JURISDICTION................................................................... 1

STATEMENT OF THE ISSUES........................................................................ 2

STATEMENT OF THE CASE........................................................................... 3

    A.    Procedural Background ........................................................... 3

    B.    Statement of the Facts ............................................................ 3

SUMMARY OF THE ARGUMENT ................................................................. 5

ARGUMENT ...................................................................................................... 6

    Issue One: 18 U.S.C. § 922(g)(1), facially and as-applied in
    appellant's case, violates the Second Amendment........................... 6

    A.    Standard of Review ................................................................ 6

    B.    Because Convicted Felons Are "People" Under the Second
        Amendment and Further Because De-armament of Convicted
        Felons Was Not Part of this Nation's Historical Tradition at
        the Time of the Adoption of the Second Amendment in 1791,
        18 U.S.C. § 922(g)(1) Is Unconstitutional ........................... 8

    C.    The Supreme Court's 2022 Decision in *Bruen* and Its Effect
        on 18 U.S.C. § 922(g)(1).......................................................... 8

    D.    Pre-*Bruen* Fourth Circuit Precedent...................................... 11

    Issue Two: The government offered insufficient evidence that
    appellant's possession of the Ruger handgun affected interstate
    commerce................................................................................................ 17

    A.    Standard of Review ................................................................ 17

    B.    In Order to Prove that a Firearm Was "In or Affecting
        Commerce," the Government Must Offer More Evidence than
        the Mere Fact that a Firearm Was Manufactured Out of State
        at Some Unknown Time in the Past, However Remote.................... 18

CONCLUSION ................................................................................................... 24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Alderman v. United States*,
562 U.S. 1163, 131 S. Ct. 700 (2011) ..................................................... 19, 23

*Blackmon-Malloy v. U.S. Capitol Police Bd.*,
575 F.3d 699 (D.C. Cir. 2009) ...................................................................17

*Citizens United v. Federal Election Comm'n*,
558 U.S. 310 (2010) .....................................................................................6

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...................................................................................14

*Konigsberg v. State Bar of Cal.*,
366 U.S. 36 (1961) .....................................................................................12

*Maryland Shall Issue, Inc. v. Moore*,
86 F.4th 1038 (4th Cir. 2023), *rehearing en banc granted*, 2024 WL
124290 (4th Cir. Jan. 11, 2024) .................................................................12

*Minnesota v. Olson*,
495 U.S. 91 (1990) .................................................................................. 15, 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .................................................................................. *passim*

*Range v. Att'y Gen. of the U.S.*,
69 F.4th 96 (3d Cir. 2023) .......................................................... 9, 10, 13, 14

*Rehaif v. United States*,
139 S. Ct. 2191 (2019) ...............................................................................22

*Scarborough v. United States*,
431 U.S. 563 (1977) ............................................................................. *passim*

*United States v. Alderman*,
593 F.3d 1141 (9th Cir. 2010) ...................................................................23

*United States v. Bishop*,
66 F.3d 569 (3d Cir. 1995) .........................................................................23

*United States v. Bullock*,
___ F. Supp.3d ___, No. 3:18-CR-165, 2023 WL 4232309
(S.D. Miss. June 28, 2023) .......................................................... 10, 13, 16

*United States v. Chesney*,
86 F.3d 564 (6th Cir. 1996) ...................................................................23

*United States v. Chester*,
628 F.3d 673 (4h Cir. 2010) ............................................................. 9, 11

*United States v. Coleman*,
___ F. Supp.3d __, 2023 WL 6690935 (E.D. Va. Oct. 12, 2023).......... 11, 12

*United States v. Crump*,
120 F.3d 462 (4th Cir. 1997) .................................................................22

*United States v. Eason*,
___ F. Supp.3d ___, No. 1:22-CR-65-HAB, 2024 WL 639350
(N.D. Ind. Feb. 15, 2024) .......................................................................10

*United States v. Gallimore*,
247 F.3d 134 (4th Cir. 2001) .................................................................22

*United States v. Green*,
996 F.3d 176 (4th Cir. 2021) ...................................................................7

*United States v. Hale*,
___ F. Supp.3d ___, No. 20 CR 404-2, 2024 WL 621614
(N.D. Ill. Feb. 14, 2024) ...................................................... 10, 13

*United States v. Hill*,
927 F.3d 188 (4th Cir. 2019) .................................................................23

*United States v. Jackson*,
85 F.4th 468 (8th Cir. 2023) .................................................................10

*United States v. Langley*,
62 F.3d 602 (4th Cir. 1995) ...................................................................22

*United States v. Lopez*,
514 U.S. 549 (1995)........................................................ 19, 20, 21

*United States v. Moore*,
666 F.3d 313 (4th Cir. 2012) ............................................................ 6, 11

*United States v. Morrison*,
529 U.S. 598 (2000).................................................................................21

*United States v. Pratt*,
915 F.3d 266 (4th Cir. 2019) ...........................................................17

*United States v. Riley*,
635 F. Supp. 3d 411 (E.D. Va. 2022) ..............................................9

*United States v. Seekins*,
52 F.4th 988 (5th Cir. 2022) .................................................... 19, 23

*United States v. Wells*,
98 F.3d 808 (4th Cir. 1996) ............................................................21

*United States v. Williams*,
504 U.S. 36 (1992)..........................................................................17

*Yee v. City of Escondido, Cal.*,
503 U.S. 519 (1992)..........................................................................7

**Statutes & Other Authorities:**

18 U.S.C. § 922 ................................................................................13

18 U.S.C. § 922(g) ...........................................................................21

18 U.S.C. § 922(g)(1)............................................................... *passim*

18 U.S.C. § 922(q) ..................................................................... 20, 21

18 U.S.C. § 922(q)(1)(A) .................................................................20

18 U.S.C. § 1202(a) .........................................................................18

18 U.S.C. § 3231 ................................................................................1

28 U.S.C. § 1291 ................................................................................1

Fed. R. App. R. 4(b)...........................................................................1

Pub. L. No. 90-351, § 1202, 82 Stat. 197 .......................................18

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291. On December 8, 2023, appellant filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. JA544.[1] The district court had jurisdiction under 18 U.S.C. § 3231.

---

[1] The joint appendix on appeal is abbreviated as "JA." The sealed portion of the joint appendix is abbreviated as "SJA."

## STATEMENT OF THE ISSUES

1. Whether 18 U.S.C. § 922(g)(1), facially and as applied in appellant's case, violates the Second Amendment.

2. Whether the government offered insufficient evidence that appellant's possession of the Ruger handgun affected interstate commerce.

## STATEMENT OF THE CASE

### A. Procedural Background

On February 16, 2022, a federal grand jury returned an indictment charging appellant with possession of a firearm (a Ruger handgun) by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). JA11. On August 8, 2022, appellant filed a motion to dismiss the indictment as charging an offense that is unconstitutional under the Second Amendment. JA14. The district court (the Honorable Theodore D. Chuang, presiding) denied that motion on January 9, 2023. JA287. On July 31, 2023, the district court conducted a two-day jury trial. JA288. *et seq.* On August 1, 2023, the jury found appellant guilty of the charged offense. JA537.

On December 8, 2023, the district court sentenced appellant to 54 months in federal prison to be followed by three years of supervised release, as well as a $100 special assessment. JA538.

### B. Statement of the Facts

At appellant's trial, the government called three witnesses. Deputy U.S. Marshals Christopher Batelli and Tyler Wells testified that, around 8:50 a.m. on January 21, 2022, while executing an arrest warrant in Prince George's County,

Maryland in the driveway of the residence in which appellant was staying, they discovered a Ruger handgun in appellant's waistband. JA311-19, 352, 355-65.

ATF Agent Matthew Leonard, who testified as an expert witness on firearms, opined that the Ruger handgun that appellant possessed was manufactured outside of Maryland (namely, in Arizona). JA425-27. Agent Leonard stated that the model of Ruger handgun possessed by appellant was last manufactured in 2005 but did not testify *when* that particular handgun was manufactured. JA, 426-27, 437. Agent Leonard also admitted that he did not know *when* the handgun had entered Maryland or *how* it had traveled into Maryland (including not knowing whether appellant himself had caused the handgun to cross state lines). JA426-37.[2]

Appellant and the government stipulated at trial that appellant previously had been convicted of a felony offense and knew that he had been so convicted as of January 21, 2022, the date that he possessed the handgun. JA440-41. The presentence report reflects that, at the time that he possessed the handgun,

---

[2] Agent Leonard also briefly testified about the ammunition found in the Ruger handgun. Agent Leonard did not know where the ammunition had been manufactured but opined that it was not manufactured in Maryland. JA438-40. Agent Leonard's testimony about the ammunition was irrelevant, however, because the indictment did not charge appellant with illegally possessing ammunition. JA11.

appellant previously had been convicted of multiple felony offenses in Maryland state court, including second-degree murder in 2015. SJA.550-553.

## SUMMARY OF THE ARGUMENT

**First**, the district court erred by denying appellant's motion to dismiss the indictment as charging an offense that violates the Second Amendment's right to possess firearms. In view of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), this Court should declare that 18 U.S.C. § 922(g)(1) is facially unconstitutional under the Second Amendment because (1) convicted felons are "people" within the meaning of the Second Amendment, and (2) the government has failed to prove that the statute's categorical prohibition against previously convicted felons' possession of firearms is part of "this Nation's historical tradition of firearm regulation." *Id.* at 17. Alternatively, at the very least, this Court should hold that § 922(g)(1) is unconstitutional as applied to appellant because he possessed the handgun on private residential property and was not then using it to commit any offense (other than violating the criminal prohibition of possession of a firearm by a previously convicted felon).

**Second**, there is insufficient evidence that appellant's intra-state possession of the handgun "affected" interstate commerce to satisfy the requirements of the

Constitution's Commerce Clause. In particular, the government offered no evidence of when and how the handgun (which was manufactured in Arizona on some unspecified date before 2006) came into Maryland. Appellant acknowledges that this argument is foreclosed by Fourth Circuit precedent. He raises it here solely to preserve it for potential review by the en banc Fourth Circuit or Supreme Court.

## ARGUMENT

**Issue One: 18 U.S.C. § 922(g)(1), facially and as applied in appellant's case, violates the Second Amendment.**

### A. Standard of Review

Because appellant preserved this issue by filing a pretrial motion that was denied by the district court (JA14, JA287), this Court engages in *de novo* review. *United States v. Moore*, 666 F.3d 313, 316 (4th Cir. 2012) ("We . . . consider, *de novo*, whether Moore's conviction under § 922(g)(1) violates the Second Amendment."). Although appellant only raised a "facial" Second Amendment challenge to § 922(g)(1) in the court below (JA229), he also may raise an alternative, "as-applied" challenge on appeal. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 330-31 (2010) (concluding that the petitioner could raise a "facial" constitutional challenge to a federal statute even though, in the lower courts, the petitioner only had raised an "as-applied" challenge because

"the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge"); *cf. Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534-35 (1992) (permitting petitioners to raise a "regulatory" Fifth Amendment taking claim for the first time in the Supreme Court despite apparently having only raised a "physical" taking claim in the lower courts); *id.* ("Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate claims. They are, rather, separate arguments in support of a single claim – that the ordinance effects an unconstitutional taking.  Having raised a taking claim in the state courts, therefore, petitioners could have formulated any argument they liked in support of that claim here."); *see also United States v. Gree*n, 996 F.3d 176, 184 (4th Cir. 2021) ("Before the district court, Green's argument that Hobbs Act robbery is not a crime of violence appears to have rested on vagueness grounds alone.  But that is not dispositive, because once a defendant raises a claim before the district court, it may make a new argument for that claim on appeal without triggering plain error review.") (citing *Yee*).

Because appellant unquestionably challenged § 922(g)(1) on Second Amendment grounds, this Court should review both his "facial" and "as-applied" arguments in a *de novo* manner.

**B.** **Because Convicted Felons Are "People" Under the Second Amendment and Further Because Disarmament of Convicted Felons Was Not Part of this Nation's Historical Tradition at the Time of the Adoption of the Second Amendment in 1791, 18 U.S.C. § 922(g)(1) Is Unconstitutional.**

Appellant's § 922(g)(1) conviction must be reversed because the statute violates the Second Amendment. Section 922(g)(1) is unconstitutional – both facially unconstitutional (and, thus, cannot be constitutionally applied to anyone, notwithstanding the severity of their criminal record) and, alternatively, unconstitutional as applied to appellant (who possessed the handgun on private residential property and was not using it to commit any offense against another person at the time that the officers seized it from him).

**C. The Supreme Court's 2022 Decision in *Bruen* and Its Effect on 18 U.S.C. § 922(g)(1).**

The Supreme Court in *Bruen* announced a new, two-step standard governing Second Amendment challenges to statutes that regulate firearm possession and use. At step one, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct[.]" 142 S. Ct. at 2126. At step two, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation" by

8

"affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126-27.[3]

The district court in this case initially denied appellant's motion at step one – concluding that convicted felons are not among the "people" protected by the Second Amendment. JA275-279. The district court thus believed it was bound by this Court's pre-*Bruen* precent, including *United States v. Chester*, 628 F.3d 673 (4h Cir. 2010). JA279. Alternatively, regarding the evidence of this country's historical regulation of convicted felons' possession of firearms, the district court expressed its agreement with the vacated panel opinion of the Third Circuit majority in *Range v. Att'y Gen. of U.S.*, 53 F.4th 262, 274-81 (3d Cir. 2022), *vacated*, 56 F.4th 992 (3d Cir. 2023), and the district court's decision in *United*

---

[3] "[T]he government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2126. This test requires courts to "consider whether historical precedent . . . evinces a comparable tradition of regulation." *Id.* at 2131-32. If "no such tradition" exists, then the statute being challenged is unconstitutional. *Id.* at 2132. And insofar as there are "multiple plausible interpretations" of an ambiguous historical record, courts must "favor the one that is more consistent with the Second Amendment's command." *Id.* at 2141 n.11. If the historical record is not clear, a "tie" goes to the Second Amendment claimant. *See id.* at 2139 (concluding that where "history [is] ambiguous at best," it "is not sufficiently probative to defend [a statute]"). The Court explained that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id.* at 2136. For that reason, the relevant "historical tradition" for purposes of a federal gun regulation is primarily that which existed in 1791, when the Second Amendment was ratified. *Id.* at 2136.

*States v. Riley*, 635 F. Supp. 3d 411, 424 (E.D. Va. 2022) – which concluded that the disarmament of convicted felons was part of the nation's historical tradition. JA280-82.

After the district court's decision in appellant's case, the en banc Third Circuit correctly disagreed with the *Range* panel on both issues – holding that (1) convicted felons were part of the "people" as understood by the Second Amendment's framers, and (2) the government did not offer sufficient evidence that disarmament of convicted felons was part of the nation's historical tradition. *Range v. Att'y Gen. of the U.S.*, 69 F.4th 96 (3d Cir. 2023) (en banc); *accord United States v. Hale*, ___ F. Supp.3d ___, No. 20 CR 404-2, 2024 WL 621614, at *6 (N.D. Ill. Feb. 14, 2024) ("[T]his court concludes that the government has not met its burden under *Bruen* to prove this nation's history and tradition of . . . even 'relevantly similar' analogues to § 922(g)(1)'s permanent, categorical firearm dispossession of all felons, the court grants defendant's motion to dismiss the indictment against him under *Bruen*."); *United States v. Bullock*, ___ F. Supp.3d ___, No. 3:18-CR-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023) (same); *see also United States v. Jackson*, 85 F.4th 468, 473 (8th Cir. 2023) (Stras, J., dissenting from rehearing en banc, joined by Erickson, Grasz & Kobes) ("The right to bear arms belongs to 'the people' – the virtuous, the non-virtuous, and everyone in between."); *United States v. Eason*, ___ F. Supp.3d ___, No. 1:22-CR-65-HAB,

2024 WL 639350, at *3 (N.D. Ind. Feb. 15, 2024) ("[T]he Court must find that Defendant [who was previously convicted of a violent felony offense] falls within the . . . Second Amendment [definition of 'people.'].""); *United States v. Coleman*, ___ F. Supp.3d __, 2023 WL 6690935, at *5 (E.D. Va. Oct. 12, 2023) ("This Court instead finds that felons unquestionably retain their membership within 'the people' covered by the Second Amendment, just as they stay within 'the people' of the First, Fourth, Ninth and Tenth Amendments, despite their status.").

### D.     Pre-*Bruen* Fourth Circuit Precedent

Appellant acknowledges that, over a decade ago, this Court rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(1).  *See Moore*, 666 F.3d 316-20 (applying the Second Amendment analytical framework set forth in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)).  However, as a panel of this Court recently has explained, the Second Amendment analysis employed by this Court a decade ago was rejected by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022):

> *Bruen* effected a sea change in Second Amendment law.  Before *Bruen*, the Courts of Appeals – including our own – used a two-step interest-balancing framework in analyzing firearm regulations.  *See Bruen*, 142 S. Ct. at 2125-26; *United States v. Chester*, 628 F.3d 673, 680-83 (4th Cir. 2010). We first asked whether a challenged regulation burdened conduct protected by the Second Amendment.  . . . If it did, then we would assess the regulation's constitutionality using means-end scrutiny.  . . . *Chester*, 628 F.3d at 680.  Yet the Supreme Court held in *Bruen* that this approach was "one step too many." 142

S. Ct. at 2127. In its place, the Court supplied an analysis centered on the Second Amendment's text and history. *Id.* at 2126-30. The Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. At that point, the challenged regulation is unconstitutional unless the government can show that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Only then "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

*Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041-42 (4th Cir. 2023), *rehearing en banc granted*, 2024 WL 124290 (4th Cir. Jan. 11, 2024);[4] *see also Coleman*, ___ F. Supp.3d __, 2023 WL 6690935, at *2 ("[T]he Supreme Court in *Bruen* held that its precedent 'do[es] not support a second step that applies means-end scrutiny in the Second Amendment context,' putting into question the continuing vitality of Fourth Circuit precedent on the issue.") (quoting *Bruen*, 142 S. Ct. at 2118).

Therefore, after *Bruen*, the question of whether § 922(g)(1) is unconstitutional is an open question in this Court. As discussed below, in applying *Bruen* to appellant's challenge to § 922(g)(1), this Court should hold that § 922(g)(1) is facially unconstitutional or, at the very least, unconstitutional as applied to appellant because he possessed the handgun on residential property

---

[4] In *Maryland Shall Issue, Inc.*, the en banc Fourth Circuit will address whether Maryland's Firearm Safety Act, which requires a handgun qualification license as condition for purchasing handgun, violates the Second Amendment.

(where he was residing) and was not committing a crime with that handgun at the time that he possessed it (other than possessing it in violation of § 922(g)(1) and comparable Maryland law).

Notwithstanding appellant's criminal record – including a felony conviction for second-degree murder – he had a Second Amendment right to possess the firearm because: (1) he is among the "people" protected by the Second Amendment, and (2) the government has failed to offer sufficient proof that our nation has a historical tradition of disarmament of convicted felons. *See Bullock*, ___ F. Supp.3d ___, No. 3:18-CR-165, 2023 WL 4232309, at *31 ("Mr. Bullock has a criminal history, yes. Armed with that knowledge, though, the government put forth no effort to ground in history the present [§ 922(g)(1)] charges it brought again him. That is what *Bruen* requires. . . . A historical analogue to support constitutional applications of § 922([(g)(1)]) might well exist, but the United States hasn't pointed to it. . . . [T]hat failure is fatal." (citation and internal quotation marks omitted); *Hale*, ___ F. Supp.3d ___, No. 20 CR 404-2, 2024 WL 621614, at *6 ("[T]his court concludes that the government has not met its burden under *Bruen* to prove this nation's history and tradition of . . . even 'relevantly similar' analogues to § 922(g)(1)'s permanent, categorical firearm dispossession of all felons, the court grants defendant's motion to dismiss the indictment against him under *Bruen*."); *see also Range*, 69 F.4th at 106 ("[W]e hold that the Government

has not shown that the Nation's historical tradition of firearms regulation supports depriving Range of his Second Amendment right to possess a firearm. *See Bruen*, 142 S. Ct. at 2126.").[5]

Even assuming *arguendo* that the government could offer sufficient evidence that our country has a historical tradition of generally prohibiting convicted felons from possessing firearms when they are not on private residential property, the government could not prove a historical tradition concerning a convicted felon who possessed a handgun when he was on private residential property at which he was staying and there is no evidence that he was using the handgun to commit any criminal offense (as opposed to possessing it for self-defense). *Cf. District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008) (in invalidating the D.C. ordinance that prohibited possession of a firearm in a person's residence, the Court noted: "The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated

---

[5] Although the en banc Third Circuit stated that its "decision today is a narrow one" – addressing only the as-applied Second Amendment challenge by Range, whose record was non-violent and involved a single prior conviction for an offense punishable in excess of one year in prison – nothing in the court's opinion drew any distinction between violent and non-violent prior felony convictions with respect to "the Nation's historical tradition of firearms regulation." *See Range*, 69 F.4th at 104 n.9 ("[T]he Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not.").

constitutional rights, banning from the home the most preferred firearm in the nation [a handgun] to 'keep' and use for protection of one's home and family, would fail constitutional muster.").[6]

In the district court, the parties each offered evidence that, they contended, shed light on our nation's historical tradition concerning regulation of possession of firearms by convicted felons. *Compare* JA26-27, 31-32, 52-197, 207-225 (appellant's evidence), *with* JA46-50 (government's evidence). A careful examination of the evidence offered by appellant demonstrates that there was no historical tradition of firearms regulation of convicted felons – or any closely analogous regulation – before the twentieth century. Especially telling are "militia acts" enacted in the immediate wake of the adoption of the Second Amendment in 1791. As appellant explained in the district court:

> In the first Militia Act, enacted one year after the Second Amendment's ratification, Congress provided that "each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years . . . shall severally and respectively be enrolled in the militia." Act of May 8, 1792, § 1, 1 Stat. 271 (Ex. C). The Act further required that "every citizen so enrolled . . . shall, within six months thereafter, provide himself with a good musket or firelock, a

---

[6] Although the record does not show, one way or the other, whether the residential property at which appellant was arrested was then his home, he clearly had spent the night there (as the officers waited for him to come outside in the morning hours). Therefore, his presence on that private residential property was tantamount to being a resident. *Cf. Minnesota v. Olson*, 495 U.S. 91 (1990) (overnight guest has a reasonable expectation of privacy in the home in which he is staying).

sufficient bayonet and belt," and various other firearm accoutrements, including ammunition. *Id.* Although the Act "exempted" certain classes of people from these requirements (e.g., "all custom-house officers," "all ferrymen employed at any ferry on the post road"), felons were not among them. *Id.* § 2, 1 Stat. 272. At least eight state militia statutes [enacted by the 13 new states], passed shortly before or after 1791, contained similar requirements, and similarly did not exempt felons. As these acts make clear, felons in the founding era not only were permitted to possess firearms, they actually were legally *required* to do so.

JA224-25. Appellant offered those militia acts in an appendix. JA62-197.

Conversely, the government in the court below cited scant relevant evidence from the late 1700s and, instead, relied on supposedly "analogous" examples of historical prohibitions on felons' other civil rights (such as the right to vote). JA49-50. The government failed to carry its burden to prove there was a historical tradition of criminalizing convicted felons' possession of firearms. Under *Bruen*, "that failure is fatal" to the government's position. *Bullock*, ___ F. Supp.3d ___, No. 3:18-CR-165, 2023 WL 4232309, at *31.

Therefore, this Court should reverse appellant's conviction and remand with directions to dismiss the indictment.

**Issue Two:** **The government offered insufficient evidence that appellant's possession of the Ruger handgun affected interstate commerce.**

## A.     Standard of Review

Because the district court specifically ruled that there was sufficient evidence that appellant's possession of the Ruger handgun affected interstate commerce (despite appellant's trial counsel's failure to have argued that specific point in her motion for judgment of acquittal) (JA442-43),[7] this Court engages in *de novo* review.  *See United States v. Williams*, 504 U.S. 36, 41 (1992) (holding that a legal issue is preserved if it was "pressed or passed upon below" and noting "this rule [of error-preservation] operates (as it is phrased) in the disjunctive, permitting review of an issue not pressed so long as it has been passed upon"); *see also United States v. Pratt*, 915 F.3d 266, 271 n.4 (4th Cir. 2019) (citing *Williams* for this proposition); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009) ("The Police Board relies on the general rule that, absent exceptional circumstances, this court will not entertain arguments not made in the district court . . . .  That rule, however, does not apply where the district court nevertheless addressed the merits of the issue [*sua sponte*].") (citing *Williams*).

---

[7] In denying appellant's motion for judgment of acquittal, the district court specifically stated that the government had offered sufficient evidence of the "interstate nexus" by offering the testimony from Agent Leonard (discussed above), *see* JA443 – obviously referring to the interstate commerce element of 18 U.S.C. § 922(g)(1).

**B. In Order to Prove that a Firearm Was "In or Affecting Commerce," the Government Must Offer More Evidence than the Mere Fact that a Firearm Was Manufactured Out of State at Some Unknown Time in the Past, However Remote.**

To understand appellant's argument, this Court must consider the statutory predecessor of 18 U.S.C. § 922(g)(1) – the former 18 U.S.C. App. § 1202(a) – which prohibited a convicted felon from receiving, possessing, or transporting any firearm "in commerce or affecting commerce."  Pub. L. No. 90-351, § 1202, 82 Stat. 197.  That language is virtually identical to 18 U.S.C. § 922(g)(1), which provides that: "It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, *or possess in or affecting commerce*, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  *Id.* (emphasis added).

In *Scarborough v. United States*, 431 U.S. 563 (1977), the Supreme Court addressed whether, under the former § 1202(a), "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." *Id.* at 564.  Focusing on statutory construction and Congress's intent in enacting the statue, the Court in *Scarborough* held that the mere fact a firearm

18

crossed state lines before a defendant possessed it, however remote in time before the defendant's possession, was itself sufficient to satisfy the federal jurisdictional element. However, the Court did *not* directly address the constitutional implications of its statutory construction. *See id.* at 577; *see also Alderman v. United States*, 562 U.S. 1163, 131 S. Ct. 700, 701 (2011) (Thomas, J., dissenting from denial of certiorari, joined by Scalia, J.) ("In *Scarborough*, this Court construed [the former statute], which made it a crime for a felon to 'receiv[e], posses[s], or transpor[t] in commerce or affecting commerce' any firearm. 431 U.S., at 564. The question in that case was whether the 'statutorily required nexus between the possession of a firearm by a convicted felon and commerce' could be satisfied by evidence that the gun had once traveled in interstate commerce. *Ibid.* The Court held that such evidence was sufficient, noting that the legislative history suggested that Congress wished to assert 'its full Commerce Clause power.' *Id.* at 571. No party alleged that the statute exceeded Congress's authority, and the Court did not hold that the statute was constitutional."); *United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc, joined by Smith & Engelhardt, JJ.) ("[T]he Court's holding in *Scarborough* was statutory, not constitutional.").

Two decades later, in *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court examined a related constitutional question presented by the former

version of 18 U.S.C. § 922(q). That statute "made it a federal offense 'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.'" *Id*. at 551 (quoting 18 U.S.C. § 922(q)(1)(A)). The Court held that the statute's prohibition of a defendant's mere possession of a firearm within a state lay "beyond the power of Congress under the Commerce Clause." *Id*. at 552. In *Lopez*, the Court discussed the three categories of activity subject to Congress's commerce power: (1) "the use of the channels of interstate commerce"; (2) activities, even if intrastate, that threaten "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Id.* at 558-59. Because the Court easily concluded § 922(q) could not be justified under the first two categories, its inquiry focused on whether §922(q) regulated an activity that "substantially affected" interstate commerce. *Id.* at 559.

The Supreme Court stated that the "States possess primary authority for defining and enforcing the criminal law" and that laws like § 922(q), which federally criminalize "conduct already denounced as criminal by the States . . . effects a change in the sensitive relation between federal and state criminal jurisdiction." *Lopez*, 514 U.S. at 561 & n.3. The Court also expressed concern that the government's arguments for why possession of a firearm in a local school

zone substantially affected commerce lent themselves to no limiting principle, opening the door to a "a general federal police power." *Id.* at 563–66. Ultimately, the Court concluded that "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567. Therefore, the Court invalidated the statute as in excess of Congress's power under the Commerce Clause. *Id.*[8]

After *Lopez*, many defendants have challenged their convictions under § 922(g)(1) when their possession of firearms were – like appellant's – solely intra-state and not related in any manner to interstate travel or economic activity. This Court, like other circuit courts, has distinguished *Lopez* on the ground that the former § 922(q) – unlike § 922(g)(1) – did not have an "in or affecting commerce" jurisdictional element and that the Court in *Scarborough* focused on that jurisdictional element in addressing § 922(g)'s statutory predecessor. *See United States v. Wells*, 98 F.3d 808, 811 (4th Cir. 1996) ("The existence of this jurisdictional element, requiring the Government to show that a nexus exists between the firearm and interstate commerce to obtain a conviction under § 922(g),

---

[8] Five years after *Lopez*, the Supreme Court reaffirmed the "substantial effects" test in *United States v. Morrison*, 529 U.S. 598 (2000). In *Morrison*, the Court rejected Congress's attempt to "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce," and held unconstitutional the civil remedy portion of the Violence Against Women Act of 1994. *Id.* at 617, 619.

distinguishes *Lopez* and satisfies the minimal nexus required for the Commerce Clause. *See Scarborough v. United States*, 431 U.S. 563, 575 (1977) (finding predecessor felon-in-possession statute within the bounds of the Commerce Clause)."). In *United States v. Crump*, 120 F.3d 462 (4th Cir. 1997), this Court added that "the movement of a firearm beyond the boundaries of its state of manufacture [necessarily] 'substantially affects' interstate commerce," even if a defendant had nothing to do with that interstate movement and even if it happened many years before the defendant possessed it. *See Crump*, 120 F.3d at 466 & n.2 (citing *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019)).

In subsequent cases, this Court thus has found sufficient evidence that a firearm was "in or affecting commerce" for purposes of § 922(g)(1) merely based on the fact that, before a defendant possessed a firearm, it had traveled across state lines – even if there was (1) no proof of how or when (however remote) the firearm traveled to the state of the defendant's possession and (2) no proof that the defendant caused such interstate travel. *See, e.g.*, *United States v. Gallimore*, 247 F.3d 134, 138-39 (4th Cir. 2001).

Although appellant acknowledges that this Court's prior precedent forecloses his argument, he raises it here in an adversarial manner so that he can seek en banc review and/or Supreme Court review of this important issue. Since

*Lopez*, many dissenting or concurring judges in several circuits have criticized their courts' rote application of *Scarborough* in rejecting compelling constitutional challenges to federal statutes, like § 922(g)(1), that have been interpreted to permit the exercise of federal jurisdiction over intrastate activity merely based on the fact that some object related to the activity had crossed state lines at some unspecified time in the past, however remote (with no other evidence of a genuine effect on *interstate* commerce). *See, e.g.*, *Seekins*, 52 F.4th at 991 (Ho, J., dissenting from denial of rehearing en banc, joined by Smith & Engelhardt, JJ.); *United States v. Alderman*, 593 F.3d 1141, 1141 (9th Cir. 2010) (O'Scannlain, J., dissenting from denial of rehearing en banc, joined by Paez, Bybee, & Bea, JJ.); *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996) (Batchelder, J., concurring); *United States v. Bishop*, 66 F.3d 569, 590-603 (3d Cir. 1995) (Becker, J., dissenting in part); *see also United States v. Hill*, 927 F.3d 188, 215 n.10 (4th Cir. 2019) (Agee, J., dissenting) ("While some tension exists between *Scarborough* and the Supreme Court's decision in *Lopez*, the Supreme Court has not granted certiorari on a case that would provide further guidance, *see Alderman*, 562 U.S. 1163 (mem.) (Thomas, J., dissenting from the denial of certiorari) (discussing this conflict), and circuit courts have routinely relied on *Scarborough* as a basis for distinguishing *Lopez* in the context of firearms-related offenses.").

These judges' compelling arguments – made as recently as 2022 – justify appellant's desire to seek further appellate review of this important issue.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the judgment of the district court.

Dated:  February 23, 2024                    Respectfully submitted,

*/s/ Brent Evan Newton*
Brent Evan Newton
Attorney at Law
19 Treworthy Road
Gaithersburg, MD 20878
(202) 975-9105
brentevannewton@gmail.com

**Attorney for Appellant**
**Antjoun Riddick**

## REQUEST FOR ORAL ARGUMENT

Appellant requests oral argument concerning the first issue raised in this brief. It is an important, unresolved question in this circuit. Oral argument would aid the decisional process of this Court.

/s/ Brent Evan Newton
Brent Evan Newton
Counsel for Antjoun Riddick


## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 5329 words. This brief complies with the typeface and type-style requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Brent Evan Newton
Brent Evan Newton
Counsel for Antjoun Riddick